UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

JOSEPH A. FERRARA, SR., *et al.*,

                Plaintiffs,

- against -

HEAVY CONSTRUCTION LUMBER, INC., *et al*.,

                Defendants.

-------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21 CV 2562 (DG) (CLP)

**POLLAK**, Chief United States Magistrate Judge:

On May 7, 2021, plaintiffs Joseph A. Ferrara, Sr., Frank Finkel, Marc Herbst, Thomas Corbett, Robert Wessels, Thomas Gesualdi, Louis Bisignano, Michael O'Toole, Michael C. Bourgal, and Darin Jeffers ("plaintiffs"), as Trustees and fiduciaries of the Local 282 Pension Trust Fund (the "Fund"), brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132, 1381, 1399(c)(5)(A), 1451(b),[1] against defendants Heavy Construction Lumber, Inc. ("Heavy Construction") and John Doe Companies 1 through 99, fictitious defendants representing yet-to-be determined trades or businesses under common control with Heavy Construction. Plaintiffs seek to recover withdrawal liability principal, as well as statutory interest, liquidated damages, and attorney's fees and costs, from Heavy Construction and the John Doe Companies.

Despite proper service of the Complaint on Heavy Construction on May 10, 2021,[2] Heavy Construction failed to file an answer or otherwise appear in this action. On June 9,

---

[1] Although plaintiffs' causes of action arise exclusively under ERISA, they cite once to the Labor Management Relations Act in their Complaint, filed on May 7, 2021, ECF No. 1 ("Compl."). (Compl. ¶ 5).

[2] (ECF No. 5).

2021, plaintiffs requested entry of a certificate of default, which the Clerk of Court entered on June 14, 2021.  On July 23, 2021, plaintiffs moved for default judgment.  (ECF No. 9).  On July 28, 2021, the Honorable Diane Gujarati referred the motion for default judgment to the undersigned to issue a Report and Recommendation.  Heavy Construction has failed to respond to the motion for default judgment.

For the reasons set forth below, the Court respectfully recommends that a default judgment be entered against defendant Heavy Construction, and that the District Court award plaintiffs **$494,523.50** in damages for withdrawal liability, prejudgment interest, liquidated damages, and attorneys' fees and costs.  The Court further respectfully recommends that the District Court dismiss the Complaint as to the John Doe Companies without prejudice.

## FACTUAL BACKGROUND

According to the Complaint, the Fund is an employee benefit and multiemployer plan, within the meaning of 29 U.S.C. §§ 1002(3) and 1002(37), with its principal place of business located at 2500 Marcus Avenue, Lake Success, New York 11042.  (Compl. ¶ 4).  The Fund is maintained pursuant to a Restated Agreement and Declaration of Trust ("Trust Agreement") for the purposes of collecting and receiving contributions from employers in collective bargaining agreements with the Building Material Teamsters Local 282, International Brotherhood of Teamsters ("Union") and providing benefits to eligible participants.  (Id. ¶ 6).  As the Fund's trustees, plaintiffs have standing to bring this action under 29 U.S.C. § 1132(a)(3).  (Id. ¶¶ 3, 7).

Heavy Construction is a New York corporation, which maintains its principal place of business at 380 Morgan Avenue, Brooklyn, New York 11211.  (Id. ¶ 8).  According to the Complaint, Heavy Construction "was a party to a series of collective bargaining agreements with" the Union, "pursuant to which Heavy Construction was required to make contributions to

the Fund." (Id. ¶ 9). Plaintiffs assert that Heavy Construction is an "employer" under Section 3(5) of ERISA, 29 U.S.C. § 1002(5), and the Trust Agreement. (Id.)

Plaintiffs allege that, in April 2019, Heavy Construction "permanently ceased all operations for which contributions were owed to the Fund and/or permanently ceased to have an obligation to contribute to the Fund, thereby withdrawing from the Fund within the meaning of Section 4203(a) of ERISA, 29 U.S.C. § 1383(a)." (Id. ¶ 11). As a result of Heavy Construction's withdrawal, it became statutorily liable to the Fund for its withdrawal liability under Section 4201 of ERISA, 29 U.S.C. § 1381, in the amount of $307,890. (Id. ¶ 12).

On February 4, 2020, the Fund sent Heavy Construction a letter notifying the company of its withdrawal liability ("Notice and Demand"). (Id. ¶ 13). Specifically, the Fund (a) informed Heavy Construction that it owed $307,890 in withdrawal liability principal and provided a schedule for withdrawal liability payments, and (b) demanded payment in accordance with the schedule as required by Sections 4202 and 4219(b)(1) of ERISA, 29 U.S.C. §§ 1382 and 1399(b)(1). (Id.) In accordance with Section 4219(c) of ERISA, 29 U.S.C. § 1399(c), the Fund informed Heavy Construction that it must either remit payment of the present value of the withdrawal liability principal due or pay the withdrawal liability principal in monthly installments. (Id. ¶ 14). Either the lump sum or first monthly installment payment was due within 60 days from the date of the Notice and Demand letter. (Id.) Heavy Construction failed to remit timely payment of either the lump sum or the first monthly installment to the Fund. (Id. ¶ 15).

On March 11, 2020, the Fund sent Heavy Construction a letter demanding that it cure its failure to pay ("Demand for Cure"). (Id.) In the Demand for Cure letter, the Fund informed Heavy Construction that if Heavy Construction failed to cure the default within 60 days, the

3

Fund would pursue all available remedies, including acceleration of the entire amount of withdrawal liability owed to the Fund. (Id. ¶ 16). Despite receipt of the Demand for Cure, Heavy Construction failed to make any withdrawal liability payments, nor did it request review of the withdrawal liability assessment, or initiate arbitration of the withdrawal liability assessment. (Id. ¶ 17).

Plaintiffs seek an Order requiring Heavy Construction to pay the Fund any and all unpaid withdrawal liability, pursuant to Sections 502(g)(2)(A) and 4301(b), 29 U.S.C. §§ 1132(g)(2)(A), and 1451(b), along with interest, liquidated damages, and attorney's fees and costs. In addition, the Complaint also asserts claims against certain "fictitious" John Doe Companies, which plaintiffs allege may be "trades or businesses under common control" with Heavy Construction and subject to treatment as a single employer under 29 U.S.C. § 1301(b). (Compl. ¶¶ 18-25). As part of the relief sought in the Complaint, plaintiffs seek an Order requiring Heavy Construction to identify all members of its controlled group and to hold all defendants liable for the damages in the case.

## DISCUSSION

A. Default Judgment

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment. Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993). First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case. See id.; see also Fed R. Civ. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default"). Second, after the Clerk of Court enters a default against a party, if that party fails to appear or

4

otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See Fed. R. Civ. P. 55(b).

The Second Circuit has warned that default judgment is an extreme remedy that should be used only when the need to move a case forward expeditiously trumps a party's right to be heard before a court of law.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981).  While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96.  Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and questions that arise regarding the default should be resolved in favor of the defaulting party.  Id.  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F. Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice").

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see Fed. R. Civ. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice

5

that the plaintiff may seek such damages); and (3) the amount of money potentially involved—the more money involved, the less justification for entering the default judgment. Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992). Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F. Supp. 2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, for the purposes of an inquest, the court accepts as true all factual allegations in the complaint, except those claims relating to damages, and the plaintiff is "entitled to all reasonable inferences from the evidence offered." Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases), aff'd, 873 F.2d 38 (2d Cir. 1989).

In support of the entry of default, plaintiffs have submitted the affirmation of plaintiffs' counsel, Michael S. Adler, Esq. (Adler Decl.[3] ¶ 1). Mr. Adler asserts that, despite proper service

---

[3] Citations to "Adler Decl." refer to the declaration in support of plaintiffs' request for default submitted by Michael S. Adler on June 9, 2021, ECF No. 6-1.

6

of the Complaint, Heavy Construction has defaulted. (Id. ¶¶ 3-7). Plaintiffs have supplied an affidavit of service showing that they served Heavy Construction with a copy of the Summons and Complaint on May 10, 2020 (ECF No. 5), and a certificate of service showing that they served Heavy Construction with the motion for default judgment on July 23, 2021. (ECF No. 9-7). Heavy Construction has failed to respond to the Complaint or plaintiffs' submissions in any way. Thus, the Court makes its recommendation based upon the documents submitted by plaintiffs in support of their motion for default judgment.

Given that Heavy Construction has defaulted, this Court considers whether plaintiffs have sustained each element of their claim for damages.

B. Withdrawal Liability

Under ERISA, a complete withdrawal occurs when an employer "(1) permanently ceases to have an obligation to contribute under the plan, or (2) permanently ceases all covered operations under the plan." 29 U.S.C. § 1383(a). Upon such withdrawal, the plan sponsor is empowered to "(1) determine the amount of the employer's withdrawal liability, (2) notify the employer of the amount of the withdrawal liability, and (3) collect the amount of the withdrawal liability from the employer." 29 U.S.C. § 1382.

Once the plan sponsor notifies the employer regarding its withdrawal liability, the employer has 90 days to request that the sponsor review its withdrawal liability determination. 29 U.S.C. §§ 1399(b)(2); 1401(b)(1). If employers dispute the alleged withdrawal liability, the employer must initiate arbitration within 60 days of the date of notification or waive its right to contest the amount of withdrawal liability assessed by the plan sponsor, in which event a district court may not make an independent determination as to the reasonableness of the calculations. 29 U.S.C. §§ 1401(a)(1), (b)(1); Gesualdi v. Seacoast Petroleum Products, Inc., 97 F. Supp. 3d

7

87, 98 (E.D.N.Y. 2015); see also Trustees of Loc. 813 Ins. Tr. Fund v. Freedom Demolition Inc., No. 13 CV 02701, 2014 WL 5305983, at *5 (E.D.N.Y. Oct. 15, 2014) (noting that "[b]y failing to initiate an arbitration proceeding within sixty days[,] . . . defendant waived its right to contest the amount of withdrawal liability calculated by plaintiffs"). Further, "[i]n the event of a default, a plan sponsor may request immediate payment of the outstanding amount of an employer's withdrawal liability, plus accrued interest." 29 U.S.C. § 1399(c)(5).

Here, plaintiffs allege that Heavy Construction withdrew from the Fund in April 2019. (Compl. ¶ 11; Bulding Decl.[4] ¶ 14). As a result of this complete withdrawal, Heavy Construction became liable in the amount of $307,890, as determined by the plan sponsor. (Compl. ¶ 12; Bulding Decl. ¶ 15). Despite the Fund's February 4, 2020 Notice and Demand and its March 11, 2020 Demand for Cure, Heavy Construction has failed to make any withdrawal liability payments; nor did it request review of the withdrawal liability assessment, or initiate arbitration of the withdrawal liability assessment. (Compl. ¶¶ 14-17; Bulding Decl. ¶¶ 16-20). Thus, Heavy Construction has waived its right to contest the amount of withdrawal liability owed, see Trustees of Local 813 Ins. Fund v. Freedom Demolition, Inc., 2014 WL 5305983, at *5, and the Court will not investigate the reasonableness of the plaintiffs' assessment of withdrawal liability.

This Court respectfully recommends that judgment be entered against Heavy Construction for the full amount of the assessed withdrawal liability and that Heavy Construction be Ordered to pay the Fund **$307,890** in withdrawal liability.

---

[4] Citations to "Bulding Decl." refer to the Fund Administrator Mario Bulding's declaration, filed on July 23, 2021, ECF No. 9-4.

C. Prejudgment Interest

Plaintiffs have also sought prejudgment interest on the withdrawal liability owed by the defendant. Pursuant to ERISA, plaintiffs are entitled to an award of interest on unpaid withdrawal liability calculated from the date that the first liability payment was due until the date of final judgment. 29 U.S.C. § 1132(g)(2)(B). According to the Trust Agreement, interest accrues on unpaid withdrawal liability at a rate of 1.5% per month, or 18% annum. (Trust Agreement,[5] Art. XI, § 5(d)(2)).

Plaintiffs explain that the full amount of withdrawal liability became due on May 15, 2020, as that day marked the point at which more than 60 days had elapsed since the Fund sent the Notice of Default to Heavy Construction. (Adler Decl. ¶ 6). As such, plaintiffs seek prejudgment interest in the amount of $65,593.22, which accrued from May 16, 2020 through July 22, 2021, plus $151.84 for each day thereafter until the date of payment. (Id. ¶ 7; Amounts Due[6] ¶ 2). Plaintiffs calculated the claimed $65,593.22 in prejudgment interest as follows: $307,890 x 18% x 432 (representing the number of days between May 16, 2020 and July 22, 2021) ÷ 365. (Adler Decl. ¶ 7). Plaintiffs arrived at the $151.84 daily rate of interest accumulation by dividing the annual amount of simple interest accruing on the principal by 365. (Id. ¶ 9).

Having reviewed the plaintiffs' simple interest calculations and determined that the interest accrued at 18% per year for the period from May 16, 2020 to July 22, 2021 is in fact

---

[5] Citations to "Trust Agreement" refer the Trust Agreement attached to Bulding Decl. as Ex. A, filed on July 23, 2021, ECF No. 9-4.

[6] Citations to "Amounts Due" refer to plaintiffs' statement of amounts due, filed on July 23, 2021, ECF No. 9-3.

$65,593.22, the Court respectfully recommends that plaintiffs be awarded this amount in prejudgment interest.

The Court also finds that plaintiffs' daily interest calculation is correct. Therefore, since a total of 167 days have passed between July 22, 2021 and the date of this Report and Recommendation, the Court respectfully recommends that plaintiffs be awarded an additional $25,357.28 in prejudgment interest, for a total of **$90,950.50**.

D. Liquidated Damages on Withdrawal Liability

ERISA provides for liquidated damages "in an amount equal to the greater of . . . interest on the unpaid contributions, or . . . liquidated damages provided for under the plan in an amount not in excess of 20 percent" of the unpaid contributions. 29 U.S.C. § 1132(g)(2)(C). Courts regularly award liquidated damages on withdrawal liability under this provision. See, e.g., Division 1181 Amalgamated Transit Union-New York Emps. Pension Fund v. D & A Bus Co., Inc., 270 F. Supp. 3d 593, 616 (E.D.N.Y. 2017) (awarding liquidated damages equaling 20% of withdrawal liability); Trustees of Local 813 Ins. Trust Fund v. Freedom Demolition, 2014 WL 5305983, at *5 (assessing liquidated damages on withdrawal liability as well as on unpaid contributions); Deianni v. New Media Printing, No. 11 CV 5267, 2012 WL 3842596, at *6 (E.D.N.Y. Aug. 17, 2012), report and recommendation adopted, No. 11 CV 5267, 2012 WL 3839618 (E.D.N.Y. Sept. 5, 2012) (awarding liquidated damages of 20% of withdrawal liability).

Here, the Trust Agreement provides for an award of liquidated damages equal to the greater of the interest due or 20% of the withdrawal liability. (Trust Agreement, Art. XI, § 5(e)). Twenty percent (20%) of the total withdrawal liability award of $307,890 equals $61,578, which is less than the interest due. Thus, the Court respectfully recommends that the District Court award plaintiffs liquidated damages of **$90,950.50**, equal to the interest due.

E. <u>Attorneys' Fees and Costs</u>

Plaintiffs seek $4,976.50 in attorneys' fees and $472 in costs incurred in connection with this action pursuant to 29 U.S.C. § 1132(g)(2)(D). (Adler Decl. ¶¶ 12-13). In support of these requests, Mr. Adler, who is a partner with plaintiffs' counsel, Cohen, Weiss and Simon LLP (the "Firm"), has submitted contemporaneous time records, in accordance with <u>New York State Association for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983), and invoices evincing counsel's fees and plaintiffs' costs. (<u>See</u> Adler Decl., Exs. B & C). The supplied billing records set forth the dates when services were rendered and the amount of time, recorded in tenths of an hour, spent on specific tasks. (<u>See</u> generally Adler Decl. Ex. B). The records also include the rates that plaintiffs' counsel charged and list the initials of the attorneys and paralegal that rendered the enumerated services. (<u>Id.</u>)

Courts employ the "lodestar" method in calculating reasonable attorneys' fees, multiplying the number of hours reasonably spent by counsel on the matter by a reasonable hourly rate. <u>See</u> <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 546, 551-52 (2010); <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d 154, 166 (2d Cir. 2011); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 183 (2d Cir. 2008); <u>Cowan v. Ernest Codelia, P.C.</u>, No. 98 CV 5548, 2001 WL 30501, at *7 (S.D.N.Y. Jan. 12, 2001), <u>aff'd</u>, 50 F. App'x 36 (2d Cir. 2002). Although there is a "strong presumption that this amount represents a reasonable fee," the resulting lodestar figure may be adjusted based on certain other factors. <u>Cowan v. Ernest Codelia, P.C.</u>, 2001 WL 30501 at *7; <u>Quaratino v. Tiffany & Co.</u>, 166 F.3d 422, 425 (2d Cir. 1999).

1. <u>Reasonable Hourly Rate</u>

In assessing whether claimed legal fees are reasonable, the Court must first determine the "presumptively reasonable fee" for an attorney's services. <u>Perdue v. Kenny A. ex rel. Winn</u>, 559 U.S. 542, 552-53 (2010); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Cty. Bd. of Elections</u>, 522 F.3d at 190. To calculate the presumptively reasonable fee, a court must establish a reasonable hourly rate for the legal services performed. <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany & Albany Cty. Bd. of Elections</u>, 522 F.3d at 190. The "prevailing" hourly rate for an attorney of similar experience and expertise in the relevant community determines what constitutes a reasonable hourly rate for the attorney in question. <u>Id.</u>; <u>Rudler v. Houslanger & Associates, PLLC</u>, No. 18 CV 7068, 2020 WL 473619, at *3 (E.D.N.Y. Jan. 29, 2020); <u>see also</u> <u>Dacas v. Duhaney</u>, No. 17 CV 3568, 2020 WL 4587343, at *4 (E.D.N.Y. June 18, 2020), <u>report and recommendation adopted</u>, 2020 WL 4586371 (E.D.N.Y. Aug. 10, 2020). The "relevant community" is the district in which the court sits. <u>Resnik v. Coulson</u>, No. 17 CV 676, 2020 WL 5802362, at *3 (E.D.N.Y. Sept. 28, 2020) (quoting <u>Farbotko v. Clinton County</u>, 433 F.3d 204, 208 (2d Cir. 2005)); <u>Polk v. New York State Dep't of Corr. Servs.</u>, 722 F.2d 23, 25 (2d Cir. 1983).

Plaintiffs' counsel identifies three individuals who worked on this matter: Michael S. Adler, Marie B. Hahn, an associate with the Firm, and George T. Kramer, a paralegal with the Firm. (Adler Decl. ¶ 15). The Firm billed the Fund on an hourly basis at the rate of $450 per hour for Mr. Adler's time, $415 per hour for Ms. Hahn's time, and $120 per hour for Mr. Kramer's time. (<u>Id.</u> ¶ 16). Plaintiffs' counsel explains that Mr. Adler is a 2002 graduate of George Washington Law School and has practiced law relating to employee benefits since 2003. (<u>Id.</u> ¶ 19). Ms. Hahn is a 2017 graduate of the City University of New York School of Law,

where she served as an editor of her school's Law Review.  (Id.)  Ms. Hahn served as a fellow for a labor union before joining the Firm in 2019.  (Id.)  Mr. Kramer has been employed with the Firm since 2002 and has assisted attorneys and clients in myriad ways throughout the course of his employment.  (Id.)

Rates for work done in relation to motions for default judgment in ERISA matters in the Eastern District of New York generally range "from $300–$450 per hour for partners, $200–$300 per hour for senior associates, and $100–$200 per hour for junior associates."  UFCW Loc. 50 Pension Fund v. G & W Food Prod., Inc., No. 20 CV 4751, 2021 WL 3934139, at *7 (E.D.N.Y. Aug. 17, 2021), report and recommendation adopted sub nom. UFCW Loc. 50 Penson Plan v. G&W Food Prod., Inc., No. 20 CV 4751, 2021 WL 3931351 (E.D.N.Y. Sept. 2, 2021) (quoting Division 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. D&A Bus Co., Inc., 270 F. Supp. 3d 593, 618 (E.D.N.Y. 2017) (collecting cases)); see also Trustees of Metal Polishers Local 8A-28A Funds v. Nu Look Inc., No. 18 CV 3816, 2019 WL 3500908, at *5 (E.D.N.Y. July 31, 2019).  "Awards for paralegal fees in this district typically range from $70 to $90 per hour in ERISA default actions."  Trustees of the Plumbers Local Union No. 1 Welfare Fund, Additional Security Benefit Fund, Vacation & Holiday Fund, Trade Education Fund v. Temperini Mech. Inc., No. 18 CV 2596, 2020 WL 571680, *4 (E.D.N.Y. Jan. 13, 2020), report and recommendation adopted, 2020 WL 565410 (E.D.N.Y. Feb. 5, 2020) (internal citations omitted); Ferrara v. PI Trucking Corp., No. 11 CV 0661, 2011 WL 7091562, at *4 (E.D.N.Y. Dec. 20, 2011) (noting that "the majority of the ERISA default cases in this District favor somewhat lower hourly rates . . . [of] $90 for . . . paralegal[s]").

Mr. Adler's requested hourly rate of $450 and Mr. Kramer's requested fee rate of $120 per hour exceed what they have recently been awarded in this district.  In Gesualdi v. D. Gangi

13

Contracting Corp., the court rejected plaintiffs' counsel's request for $450 per hour for Mr. Adler's work and $120 per hour for Mr. Kramer's work, finding such fees to be unreasonable. See id., No. 18 CV 3773, 2019 WL 1130729, at *8 (E.D.N.Y. Feb. 11, 2019), report and recommendation adopted, No. 18 CV 3773, 2019 WL 1128356 (E.D.N.Y. Mar. 12, 2019). The Magistrate Judge observed that Mr. Adler had recently received a fee assessment of $390 per hour, id. (citing Gesualdi v. Nacirema Indus. Inc., No. 16 CV 4159, 2017 WL 9487171, at *6 (E.D.N.Y. Aug. 31, 2017), report and recommendation adopted, No. 16 CV 04159, 2017 WL 4326049 (E.D.N.Y. Sept. 28, 2017)), and reasoned that, "given the simplicity of an ERISA default judgment and the prevailing reasonable rates for the attorneys and paralegal involved in this case," Mr. Adler's fee should be limited to $400 per hour and the hourly paralegal rate should be reduced to $95 per hour. Id.

In August of 2021, another Magistrate Judge in this district awarded Mr. Adler fees at an hourly rate of $416 per hour and awarded Mr. Kramer fees in the amount of $83 per hour. See UFCW Loc. 50 Pension Fund v. G & W Food Prod., Inc., 2021 WL 3934139, at *7; see also Retirement Fund of Loc. 1482 Paint & Allied Prod. Manufacturers v. N. Adhesives, Inc., No. 19 CV 05609, 2020 WL 6370060, at *5 (E.D.N.Y. May 27, 2020), report and recommendation adopted, No. 19 CV 05609 2020 WL 5587271 (E.D.N.Y. Sept. 17, 2020) (finding that an hourly rate of $400 was reasonable for Mr. Adler).

The Court agrees that the rates requested for Mr. Adler's time and that of Mr. Kramer are somewhat higher than those normally awarded for simple ERISA default cases, and respectfully recommends that Mr. Adler's time be calculated at the rate of $400 per hour and Mr. Kramer's rate be reduced to $90 per hour. The Court also finds that Ms. Hahn's requested rate of $415 per hour is somewhat higher than the rates normally awarded for attorneys of her level of experience

14

in ERISA default cases. See, e.g., Gesualdi v. Nacirema Indus. Inc., 2017 WL 9487171, at *6 (reducing plaintiffs' counsel's request for $390 per hour for a sixth-year associate's work in an ERISA default action to $280 per hour). The Court thus finds that a reasonable rate for her time would be $345 per hour.

Thus, the Court respectfully recommends that plaintiffs' counsel's requested hourly rates be reduced to $400 per hour for Mr. Adler, $345 per hour for Ms. Hahn, and $90 per hour for Mr. Kramer.

### 2. Reasonable Number of Hours

The next step in awarding attorney's fees is determining the reasonableness of the hours expended by counsel. See, e.g., Irving v. G. & G. Instrument Corp., 2020 WL 1536325 at *5; LaBarbera v. Empire State Trucking, Inc., No. 07 CV 669, 2008 WL 746490, at *4-5 (E.D.N.Y. Feb. 26, 2007). In reviewing a fee application, the court should exclude "excessive, redundant or otherwise unnecessary hours." Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (quoting Hensley v. Eckerhart, 461 U.S. 424, 433-35, 440 (1983)); Gesualdi v. Dove Mason Supply Co., 19 CV 1181, 2020 WL 1538746, at *6 (E.D.N.Y. March 11, 2020). If the court finds "that some of the time was not reasonably necessary . . . it should reduce the time for which compensation is awarded accordingly." Louis Vuitton Malletier, S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012). Rather than itemizing individual entries as excessive, the court may make an "across-the-board reduction, or percentage cut, in the amount of hours." T.S. Haulers, Inc. v. Cardinale, No. 09 CV 451, 2011 WL 344759, at *3 (E.D.N.Y. Jan. 31, 2011) (citing Green v. City of New York, 403 F. App'x 626, 630 (2d Cir. 2010)).

According to plaintiffs, the three individuals for whom fees are requested spent the following number of hours on this matter: Mr. Adler spent 7.1 hours; Ms. Hahn spent 2.5 hours;

and Mr. Kramer spent 6.2 hours. (Adler Decl. ¶ 18). Thus, in total, plaintiffs' counsel claims to have spent a total of 15.8 hours on this matter. Having reviewed plaintiffs' counsel's records, the Court finds that the number of hours billed are not objectively unreasonable. Therefore, the Court finds no need to reduce the hours for which plaintiffs seek fees.

Accordingly, the Court respectfully recommends that plaintiffs be awarded compensation for 15.8 hours of work performed as follows: $2,840 for Mr. Adler's work, representing 7.1 hours worked at a rate of $400 per hour; $862.50 for Ms. Hahn's work, representing 2.5 hours worked at a rate of $345 per hour; and $558 for Mr. Kramer's work, representing 6.2 hours worked at a rate of $90 per hour, for a total of **$4,260.50** in fees.

F. Costs

Under ERISA, plaintiffs who prevail on enforcement actions are entitled to recover reasonable costs. See 29 U.S.C. § 1132(g)(2)(D). Filing fees and service of process fees are recoverable as a matter of course. 28 U.S.C. § 1920; Finkel v. Triple A Group, Inc., 708 F. Supp. 2d. 277, 290 (E.D.N.Y. 2010) (awarding $818.53 in costs for filing fees, service, postage, and photocopying).

Plaintiffs have requested $472 in costs, corresponding to $402 for the filing fee and $70 paid for service of process. (Adler Decl. ¶ 22). The Court takes judicial notice of the $402 filing fee in this district. Gesualdi v. Dove Mason Supply Co., Inc., 2020 WL 1538746, at *7; Phillip Morris USA, Inc. v. Jackson, 826 F. Supp. 2d 448, 453 (E.D.N.Y. 2011); Joe Hand Promotions v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013). Moreover, plaintiffs have supplied an invoice evincing the $70 cost of service of process. (Adler Decl. Ex. C). Therefore, the Court respectfully recommends that plaintiffs be awarded **$472** in costs.

CONCLUSION

Considering the foregoing, the Court respectfully recommends that the District Court award plaintiffs damages in the amount of **$494,523.50**, reflecting:

(1) **$307,890** in withdrawal liability;

(2) **$90,950.50** in prejudgment interest on the withdrawal liability;

(3) **$90,950.50** in liquidated damages on the withdrawal liability;

(4) **$4,260.50** in attorneys' fees; and

(5) **$472** in costs.

Moreover, the Court further respectfully recommends that, in accordance with plaintiffs' request (Budling Decl. ¶ 25), the District Court dismiss the Complaint against the John Doe Companies without prejudice and with leave to either reopen this action or bring a new action against any entity that falls within Heavy Construction's control group.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008).

Plaintiffs are directed to serve a copy of this Order promptly by certified mail, return receipt requested, on Heavy Construction and to provide the Court with copies of the return receipts. The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
January 5, 2022

/s/ Cheryl L. Pollak
Cheryl L. Pollak
Chief United States Magistrate Judge
Eastern District of New York
